UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Pamela K. Lewis,

    Plaintiff,

v.

CNA National Warranty Corporation,

    Defendant.

No. 13-cv-1239 (JNE/SER)
ORDER

---

This is an employment discrimination action. Plaintiff Pamela Lewis alleges that she was discharged by her former employer, Defendant CNA National Warranty Corporation ("CNAN"), because of her sex, age, and disability in violation of the Minnesota Human Rights Act.

CNAN describes itself as a company that "distributes vehicle service contracts and related products through franchised new car automotive dealers nationwide." CNAN employs Regional Vice Presidents ("RVPs") of Sales to work both with the independent agents who sell its products to auto dealerships and with the dealerships themselves. CNAN hired Lewis as an RVP of Sales in December of 2005 and discharged her in November of 2012, when she was 42 years old.

The case is currently before the Court on CNAN's Motion for Summary Judgment. For the reasons discussed below, the motion is denied with respect to Lewis' sex and age discrimination claims and granted with respect to her disability discrimination claim.

**Discussion**

The Minnesota Human Rights Act ("MHRA") makes it "an unfair employment practice" for an employer, "[e]xcept when based on a bona fide occupational qualification," to "discharge" an employee "because of" her sex, age, or disability. Minn. Stat. § 363A.08, subd. 2.

Discriminatory discharge "may be established under either a disparate impact or disparate treatment theory." *Goins v. West Group*, 635 N.W.2d 717, 722 (Minn. 2001). Lewis alleges disparate treatment. Accordingly, "proof of discriminatory motive is critical," as CNAN's "liability 'depends on whether the protected trait . . . actually motivated [its] decision" to discharge Lewis. *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000)).

Lewis may satisfy her burden of establishing that a trait protected by the MHRA "actually played a role" in CNAN's decisionmaking process, *id.* (quoting *Reeves*, 530 U.S. at 141), either with "direct evidence of discriminatory animus" or through "the three part burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.E.2d 668 (1973)," *Hansen v. Robert Half Intern., Inc.*, 813 N.W.2d 906, 918 (Minn. 2012).

With its motion, CNAN argues that Lewis cannot meet her burden through either approach with respect to any of her three claims. To be entitled to summary judgment, CNAN bears its own burden of "show[ing] that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this posture, the evidence, and all reasonable inferences from it, are viewed in the light most favorable to Lewis as the nonmoving party. *E.g., Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 680 (8th Cir. 2012).

Lewis' three claims are discussed below.

I.  **Sex and age discrimination.**

In her memorandum opposing CNAN's motion and at the motion hearing, Lewis focused on her sex discrimination claim and did not offer a separate argument in support of her age discrimination claim. At the same time, Lewis asserted that her age discrimination claim is "perhaps more accurately [a] sex-plus-age discrimination claim."

As Lewis points out, the Eighth Circuit recently decided that such a claim is "likely cognizable under the MHRA":

> "'Sex-plus' discrimination occurs when employees are classified on the basis of sex plus one other seemingly neutral characteristic." *Knott v. Mo. Pac. R. Co.,* 527 F.2d 1249, 1251 (8th Cir.1975). [Plaintiff] claims the [defendant] discriminated against her as an older woman. Although the Minnesota Supreme Court has not had occasion to recognize a claim for sex-plus-age discrimination under the MHRA, the Minnesota Court of Appeals has done so. See *Pullar v. Indep. Sch. Dist. No. 701,* 582 N.W.2d 273, 277 (Minn.Ct.App.1998) (citing *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971) (per curiam)). The [defendant] seeks to distinguish *Pullar* on the grounds that it dealt with a "sex-plus" discrimination claim where the additional characteristic, familial status, was not otherwise protected under the MHRA. However, we agree with the district court that a claim of sex-plus-age discrimination is likely cognizable under the MHRA. After all, as the district court noted, age is one way an employer could discriminate against some members of one sex but not the other. Moreover, [plaintiff] contends her sex and her age both played a role in the [the defendant's] decisions, and "[t]hese characteristics do not exist in isolation." *Shazor,* 744 F.3d at 958. "To be actionable, however, 'sex-plus' discrimination claims must be premised on gender. 'Sex-plus' plaintiffs can never be successful unless there is a corresponding sub-class of members of the opposite gender." *Pullar,* 582 N.W.2d at 277 (citing *Coleman v. B–G Maint. Mgmt.,* 108 F.3d 1199, 1203 (10th Cir.1997)). Here, [plaintiff's] "corresponding sub-class" is comprised of older men.

*Doucette v. Morrison County, Minn.,* 763 F.3d 978, 987 (8th Cir. 2014).

Accordingly, the Court will consider Lewis' claims that she was discharged because of her sex and her age together here.

**A. Direct evidence.**

CNAN first argues that Lewis has no direct evidence that the decision to discharge her was motivated by discriminatory animus based on her sex and/or age. The Court agrees.

"Direct evidence of an employer's discriminatory motive shows that the employer's discrimination was purposeful, intentional or overt. . . . Courts have found direct evidence of discriminatory motive where a statement or a policy is discriminatory on its face," such as where a "manager admitted that age was one of three criteria used to determine which employees would be retained and which would not" and where a "sheriff stated that he would not consider hiring women for seven open deputy positions." *Goins*, 635 N.W.2d at 722-23 (citing *Febres v. Challenger Caribbean Corp.,* 214 F.3d 57, 61 (1st Cir. 2000) and *Hardin v. Stynchcomb*, 691 F.2d 1364, 1369 n.16 (11th Cir. 1982)).

Under this rubric, Lewis points to comments that she asserts were made in the months before her discharge by Jay Sharpnack, her supervisor during the last year of her employment with CNAN. In her deposition, Lewis testified that Sharpnack had often made "unfair or inappropriate" remarks in her presence, but "[t]he particular comment that really stuck with me and -- and hurt me personally -- and I think he delivered it trying to be kind of empathetic -- was, he flat-out said, 'It must be difficult being a woman over 40 in this business.' That a man can have a much longer career, but it wasn't fair. And that a woman had a shorter shelf life."

Even viewed in the light most favorable to Lewis, however, these comments do not reveal on their face that Sharpnack's decision to discharge Lewis was actually motivated by her sex and/or age. On their own, the comments could plausibly be read either as an expression of Sharpnack's personal bias against women over 40 or as his observation of a state of affairs in the industry with which he did not agree. While the former interpretation is owed to Lewis in this

posture, the comments themselves nevertheless remain at least one inferential step away from Sharpnack's decisionmaking process with respect to Lewis' discharge. *See Cronquist v. City of Minneapolis*, 237 F.3d 020, 925 (8th Cir. 2001) (explaining that direct evidence of discriminatory motive does not "require a series of inferences to be drawn before a discriminatory attitude could be attributed to those who made the employment decisions"). As a result, Sharpnack's comments lack the "causal strength" that is the hallmark of direct evidence of a discriminatory discharge. *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).

### B. Burden-shifting framework.

That is not to say, however, that Lewis' evidence is insufficient to create a genuine issue of material fact as to whether Sharpnack's decision to discharge her was an act of discrimination based on her sex and/or age. Even without direct evidence of discriminatory animus, Lewis may still avoid summary judgment via the *McDonnell Douglas* burden-shifting framework. *E.g., Hansen*, 813 N.W.2d at 918.

Under that framework, "a plaintiff must first make out a prima facie case of discrimination. . . . Once established, the burden then shifts to the employer to articulate a legitimate and nondiscriminatory reason for the adverse employment action. . . . The burden then shifts again to the plaintiff to put forward sufficient evidence to demonstrate that the employer's proffered explanation was pretextual." *Id.* (internal citations omitted).

#### 1. Prima facie case.

To create an inference of discrimination and shift the burden to the employer, the plaintiff need only make a "minimal showing." *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253

F.3d 1106, 1111 (8th Cir. 2001). "To establish a prima facie case of discriminatory discharge, an employee must show that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was discharged; and (4) the employer assigned a nonmember of the protected class to do the same work." *Hansen*, 813 N.W.2d at 918. Lewis has established such a prima facie case here, with regard to both her sex and age (or sex-plus-age) discrimination claims, as follows.

First, there is no dispute about the first and third elements. The MHRA's prohibitions on employment discrimination protect Lewis, both as a woman and as an individual over the age of 18, from discharge based on her sex and age. *See* Minn. Stat. § 363A.03, subd. 2 ("The prohibition against unfair employment or education practices based on age prohibits using a person's age as a basis for a decision if the person is over the age of majority . . . .").

Second, as to the second element, Lewis has shown that she was qualified for her position as an RVP of Sales. CNAN argues that this element of the prima facie case is not established because Lewis did not "remain[] qualified for her position at the time of discharge," as evidenced by documented problems with her job performance. However, the question at this stage of the analysis is not whether Lewis performed well in the job, but simply whether she was objectively qualified to hold the position, such as by her skills or education. *E.g., McGinnis v. Union Pacific R.R.*, 496 F.3d 868, 875 n.3 (8th Cir. 2007) (explaining that, at the qualification prong of the prima facie case, the plaintiff need not anticipate and "disprove the reasons given for his discharge" by the employer); *Kobrin v. Univ. of Minn.*, 34 F.3d 698, 702 (8th Cir. 1994) ("For purposes of establishing a prima facie case, the plaintiff need only show her objective qualifications for the job.") (internal quotation and punctuation omitted). CNAN does not assert that Lewis was unqualified in this sense, and in any event, the annual reviews in the record

demonstrate that, in the opinion of CNAN management, Lewis adequately fulfilled her job requirements for several years before any significant concerns were raised about her performance.

Finally, as to the fourth element, CNAN concedes that it replaced Lewis with a man, who is necessarily outside of Lewis' protected class, whether defined by her sex only or by her sex in combination with her age. CNAN argues, however, that at this prong Lewis must show more – namely, that she "was treated less favorably than similarly situated employees who are not in [her] protected class." This is unpersuasive. "The required prima facie showing is a flexible evidentiary standard, and a plaintiff can satisfy the fourth part of the prima facie case in a variety of ways . . . ." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011). While a comparator analysis may certainly be one of those ways, it is not the only way for a plaintiff to establish the requisite inference of discrimination at this stage of the analysis.

Lewis' showing is therefore sufficient to satisfy the "low-threshold standard" for making out a prima facie case of discriminatory discharge based on her sex and/or age. *Doucette*, 763 F.3d at 982 n. 6 (quoting *Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009)).

### 2. Legitimate and nondiscriminatory reason.

As a result, the burden shifts to CNAN to articulate a legitimate and nondiscriminatory reason for Lewis' discharge. In order to "rebut[] the inference of discrimination arising from the prima facie case" and to give the plaintiff "a full and fair opportunity to demonstrate pretext," that explanation "must be clear and reasonably specific." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258 (1981) (internal quotation and citation omitted).

CNAN states that Lewis was fired because Sharpnack "concluded that Lewis had fallen short on conforming to the steps outlined in [the] PIP" he instituted for her in August of 2012, following immediately on a poor showing on her annual performance review. One major goal of that Performance Improvement Plan was to ensure that Lewis was "bringing value to her agents in all that she does."

Lewis seizes on the assertion that she was not "bringing value" to the job, arguing that it is too vague to meet CNAN's burden of articulating a reasonably specific nondiscriminatory reason for her discharge. But the reason CNAN has actually articulated, in the context it has provided, is far from amorphous. CNAN has placed an affidavit from Sharpnack and a number of contemporaneous personnel documents into the record, all of which evince that Lewis' supervisors had received complaints from the agents in her region regarding her job performance for several years prior to her discharge. The gravamen of that evidence is that Lewis repeatedly neglected to respond to the agents' phone calls in a timely manner and otherwise failed to proactively communicate with and support them, which over time caused the agents to lose confidence in her and, in some documented instances, to seek out other RVPs. Those issues had spurred Lewis' previous supervisor, Alan Miller, to place her on two prior PIPs, in October of 2009 and January of 2010, as well as to assign Sharpnack, then a fellow RVP of Sales, to mentor her in December of 2011. When Sharpnack was promoted to National Sales Manager and replaced Miller as Lewis' supervisor in May of 2012, CNAN's evidence shows that he continued to coach her in those areas – including formally under her third PIP – until her discharge in November of 2012.

Sharpnack set forth his evaluation of Lewis' progress under the third PIP in an email to CNAN's human resources department two days before her discharge:

> Based on the plan that was established on August 2, 2012, [Lewis] was to adhere to a number of action items to keep her focused on the basics of the job, establish expectations of her customers, and develop value adding opportunities within each [of] her agency relationships. . . . Although she has done a better job of the basics (answering her phone when an agent calls and returning calls within a specified amount of time, as well as keeping up with ACT, sales calendar, and internal and external correspondence), she is still failing to bring value to her agents in all that she does. . . .
>
> As defined in the Plan, I have also communicated with many of [Lewis'] key agents as to their perception of [her] in the role as their RVP. Although [she] is well liked, and her company is enjoyed by those agents questioned, many do not see any value in [her] presence in the job. This opinion is based on many years of falling short of their expectations, her inability to consistently service their business with a focus on delivering value, and the fact that many of the agency personnel (working for the agency principal) have lost confidence in her ability to deliver accurate and timely information. In addition, agents have gone so far as to ask for a different representative from CNAN to service their business.
>
> . . . I believe that we have given [her] ample time to adhere to the requirements of the job, and that she has failed to meet the above stated requirements to become an effective, value-added resource for her agents. It is therefore my opinion, that we should move forward with the procedures to formally terminate her employment.

CNAN's articulation of a nondiscriminatory reason for Lewis' discharge is therefore sufficient. *See Doucette*, 763 F.3d at 983 ("A legitimate reason for discharge may include the plaintiff's lack of improvement in the specific areas in which she was counseled.") (internal quotation and citation omitted). While Lewis disagrees with the conclusion that Sharpnack reached regarding her lack of improvement under the third PIP and the value she brought to her agents, CNAN bears only a burden of production, not persuasion, and "[i]t is not [the court's] role to question that [her] errors were a problem for her employer." *Id. See also Burdine*, 450 U.S. at 258.

### 3. Pretext.

"[I]n order to avoid summary judgment under the *McDonnell Douglas* third step, the employment discrimination plaintiff must put forth sufficient evidence for the trier of fact to infer that the employer's proffered legitimate nondiscriminatory reason is not only pretext but that it is pretext for discrimination." *Hoover v. Norwest Private Mortg. Banking*, 632 N.W.2d 534, 546 (Minn. 2001).

Lewis attempts to meet this requirement in three ways: with a challenge to the factual basis of CNAN's proffered reason for her discharge; with a comparator analysis; and with the comments by Sharpnack discussed above.

### a. Factual basis.

First, Lewis argues that CNAN has no admissible evidence – in particular, no affidavits from the agents who were allegedly dissatisfied with her performance – to support Sharpnack's conclusion that she was not "bringing value" to the job. The implication, of course, is that CNAN's "proffered explanation is unworthy of credence." *Sigurdson v. Isanti County*, 386 N.W.2d 715, 720 (Minn. 1986). *See also Hoover*, 632 N.W.2d at 546 ("In some cases, sufficient evidence [to avoid summary judgment] may consist of only the plaintiff's prima facie case plus evidence that the employer's proffered reason for its action is untrue.").

However, the evidence of the agents' complaints about Lewis' job performance that CNAN has offered is not inadmissible. *See, e.g., Hardi v. Cotter and Co.*, 849 F.2d 1097, 1101 (8th Cir. 1988) (in wrongful discharge case, documents containing customer complaints against plaintiff "were not offered to prove the truth of the material contained within them, but to

demonstrate the state of mind of [defendant company's] personnel who made the decision to discharge [the plaintiff,] a factor of crucial importance in wrongful discharge cases").

Contrary to Lewis' argument, it is not CNAN's burden to prove the truth of the matters that Sharpnack claims were asserted to him by the agents. *Id. Cf.* Fed. R. Evid. 801(c). Instead, as the plaintiff claiming that the employer's proffered reason for her discharge is baseless, it is her burden to disprove them.

### b. Comparator.

Second, Lewis argues that CNAN treated a similarly-situated male employee named Vincent D. with similar performance problems "more leniently and more favorably." In this regard, if Lewis has evidence to "demonstrate[] that a comparator engaged in acts of 'comparable seriousness' but was disciplined differently," then it would be for the "factfinder [to] decide whether the differential treatment is attributable to discrimination or some other cause." *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1085 (8th Cir. 2013) (quoting *Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 489 (8th Cir. 1998)). *See also Doucette*, 763 F.3d at 983 ("We may find the [defendant's] asserted reason for firing [the plaintiff] was pretextual if it was not the [defendant's] policy or practice to respond to performance problems in the way it responded in her case.") (internal punctuation and citation omitted).

But the comparator evidence that Lewis has produced cannot be so construed. Vincent D. was, like Lewis, an RVP of Sales under the supervision of Sharpnack. Vincent D. was placed on a PIP in September of 2013 after his agents complained to Sharpnack that they had "lost confidence in [him] and his ability to help positively impact their agency's business." Accordingly, the overarching goal of the PIP that Sharpnack designed was to induce Vincent D.

to "become an effective, value-add resource for his assigned agents." Originally slated to run for 90 days, the PIP was extended until Vincent D. was ultimately discharged in April of 2014. CNAN's stated reason for the discharge was that he "failed to progress his performance to acceptable levels" and "his manager continued to receive complaints . . . from agents."

It is not apparent how this evidence could create a genuine issue of material fact as to whether Sharpnack's decision to discharge Lewis was actually motivated by her sex and/or age. Even assuming that Vincent D. was similarly situated to Lewis – despite the fact that she been placed on a total of three PIPs while he only one, *see Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002) (where employer discharged plaintiff for disciplinary problems, comparator must have "comparable disciplinary history" in order to be "similarly situated") – the evidence is that CNAN took the same actions with these two employees in response to similar performance problems. Lewis and Vincent D. were both placed on a PIP as a result of breakdowns in their working relationships with their agents, and then discharged when, in Sharpnack's estimation, they failed to make adequate improvements in accordance with the PIP.

Lewis has thus failed to meet her "burden to demonstrate by a preponderance of the evidence" that there were employees at CNAN outside of her protected class "who were not disciplined as she was for comparable conduct." *Doucette*, 763 F.3d at 983.

### c. Comments.

In her final effort to avoid summary judgment, Lewis again points to the comments that she asserts Sharpnack made about women over the age of 40 having a "shorter shelf life" in the industry than men. Though those comments do not amount to direct evidence of discriminatory animus for the reasons discussed above, they may nonetheless satisfy Lewis' burden at this step

of the *McDonnell Douglas* analysis to produce evidence from which it could be reasonably inferred that her sex and/or age actually played a role in the decision to discharge her, despite CNAN's claims to the contrary.  *E.g., King v. U.S.*, 553 F.3d 1156, 1160-63 (8th Cir. 2009) (addressing same statement both as direct evidence and under third step of *McDonnell Douglas* framework).

CNAN and Lewis both briefed and argued the import of Sharpnack's "shelf life" comments as if they were made in isolation.  But Lewis' deposition actually provides a much more detailed picture of her interactions with and observations of Sharpnack than the memoranda suggest.  On summary judgment, the Court is bound only to consider the materials cited to it by the parties, but it may on its own initiative "consider other materials in the record." Fed. R. Civ. P. 56(c)(3).  Having conducted an independent review of Lewis' deposition, the Court will not ignore the full extent of her testimony here.

Relevant to the role that Lewis' sex and/or age may have played in Sharpnack's decision to discharge her, then, is Lewis' testimony that:

- Sharpnack made "off-color" remarks and sexual references "every day," including a "crass" joke involving the female anatomy and a gender stereotype that he told "at least half a dozen times" as well as comments about a younger female RVP's body;

- similar "off-color" jokes and "sexist" comments "were constantly thrown around" among CNAN's employees, and Sharpnack, who was "viewed as a leader" even before he was promoted to National Sales Manager, "set the tone for that being okay";

- Sharpnack complimented Lewis for being "one of the guys" when she showed that she could "roll[] with" these sort of "sexual" comments and jokes and "dish it" back rather than complaining; and

- she witnessed Sharpnack discount an agent's praise of her work and instead suggest that she was valued only for her appearance.

Based on these and other incidents, Lewis testified that she understood Sharpnack's "shelf life" comments to be indicative of his personal view that "there was a place for a young, attractive woman [in the industry], but there wasn't a place for an aging woman." According to Lewis, that bias caused Sharpnack to unfairly scrutinize her performance in an effort to "make a case" for discharging her. On this record, the Court cannot say that that inference is unreasonable as a matter of law; whether it is persuasive as a matter of fact is for a jury to decide.

CNAN's motion for summary judgment is therefore denied with respect to Lewis' sex and age discrimination claims.

## II.     Disability discrimination.

However, Lewis' third claim – that she was discharged "because of" a disability in violation of the MHRA[1] – is another matter.

On this claim, CNAN argues that Lewis does not have a disability within the meaning of the MHRA, and consequently cannot invoke the protection the statute provides against discharge on the basis of disability. *See* Minn. Stat. § 363A.03, subd. 12 (defining "disability" as "any condition or characteristic that renders a person a disabled person," and "[a] disabled person" as "any person who (1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment").

---

[1] Under the MHRA, it is a separate and distinct "unfair employment practice" for an employer "not to make reasonable accommodation to the known disability of a qualified disabled person . . . ." Minn. Stat. § 363A.08, subd. 6.
  Lewis makes no argument about reasonable accommodations; her disability claim, both as she pled it in her Complaint and as she argued it on this motion, is focused solely on her allegation that she was fired "because of" her disability.

Lewis has produced evidence that she was diagnosed with Attention Deficit Hyperactivity Disorder in the spring of 2012, and that she took an approximately one-month medical leave within days of being placed on her third PIP in August of 2012 because of her doctor's concern over her "level of anxiety" at that time. According to Lewis, her ADHD and anxiety constitute a disability under the MHRA because they negatively affected her ability to concentrate and manage details, which in turn impacted her ability to fulfill her job requirements as an RVP of Sales. *See Hoover*, 632 N.W.2d at 544 (noting that work can be a "major life activity" under the MHRA's disability provisions and finding symptoms including concentration problems and forgetfulness to constitute a disability where it limited plaintiff's ability to perform her duties as a loan originator),

But even assuming that Lewis' showing as to her ADHD and anxiety is sufficient in this regard, Lewis has offered no evidence that her disability actually played a role in Sharpnack's decision to discharge her. In opposing CNAN's motion with respect to this claim, Lewis states only that "[t]he same genuine issues of material fact exist with Lewis's disability discrimination claim as exist with her sex and sex-plus age discrimination claims, and the analysis of the evidence is the same for all three claims."

However, as explained above, Lewis may avoid summary judgment on her disability discrimination claim only if she has "sufficient evidence for the trier of fact to infer that the employer's proffered legitimate nondiscriminatory reason is not only pretext but that it is pretext for discrimination." *Hoover*, 632 N.W.2d at 546. *Accord Cronquist*, 237 F.3d at 926. The conclusion that Lewis has produced sufficient evidence for a jury to infer that she was discharged because of her sex and/or age does not dictate that that evidence is susceptible to an inference that she was discharged because of a disability.

While the relevance of Lewis' ADHD and anxiety to her sex and age discrimination claims may yet be shown, she has not even attempted to identify evidence from which it could be inferred that she was discharged because of a disability.  Therefore, insofar as CNAN seeks summary judgment on Lewis' disability discrimination claim, the motion is granted.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's Motion for Summary Judgment [ECF No. 12] is GRANTED IN PART and DENIED IN PART consistent with the memorandum above.

Dated: October 24, 2014                                    s/Joan N. Ericksen
                                                                                           JOAN N. ERICKSEN
                                                                                           United States District Judge